Christian, J.,
delivered the opinion of the court.
The court is of opinion that the contract of assignment made between Thomas H. Tutwiler, trustee, and James Woods in his lifetime, and the more formal assignment of O. S. Moon, after the death of James Woods, to Garrett W. Martin, his executor, transferring to him certain bonds executed by M. A. Brown *731 and Ms interest in two deeds of trust securing the payment of said bond, conferred upon the executor, Garrett W. Martin, the right to require of the an execution of the trust, by making sale of the real ber 1858. estate conveyed by said deed of the day of Septem-
The court is further of opinion, that the loss of the slaves by the emancipation by the government of the United States, ought not to fall upon the estate of the said James Woods. The security for the said debt was both the land conveyed by said deed and the slaves conveyed by the deed of August 1858. The provisions of the deed of September 1858, requiring the personal estate conveyed by the deed of August 1858 to be sold, and the proceeds to be applied before the real estate should be offered for sale, was not a stipulation that the land should in no event be sold until the slaves had first been disposed of. Such a construction would be to hold that if the slaves had died or had run away, or been sold by the grantor in whose possession they were left, the real estate could never be sold and the trust never executed. The loss of the slaves by emancipation is precisely the same thing to the creditor as their loss by death. It must fall on the grantor, in whose possession they became free, and not on the creditor. They were in part, and in part only, security for the debt, and as such security they have perished. But the debt remains unextinguished, and the land remains as security for its payment. The provision of the deed relied upon is not a stipulation that binds the trustee at all events to sell the personal property before he could sell the land; but the plain meaning of the provision is that whenever the trust was executed (which by the terms of the deed was to be done on the written request of the creditor or Ms *732 assignee), then the trustee should sell the personal estate first, that is, the personal estate in existence at the time the sale. If, when the trustee proceeded te execute trugt he found the slaves were dead, or had run away, or had been sold by the grantor, or had been emancipated by the government, he could not of course execute the trust as to them; because it was simply impossible.
But this impossibility of selling the slaves certainly does not interpose any reason why the land should not be sold, because the deed required him to sell the slaves before he should sell the land. This would be to declare in effect that the slaves alone were pledged as security for the debt, when by the solemn deed of the parties the land is also dedicated to its payment. The very object of giving the second deed was to give a better security for the debt than the property conveyed in the first deed, which only conveyed the slaves and the life estate of Brown in the land. It is manifest that it was the dissatisfaction of the debtor with the security of the first deed that prompted the execution of the second. The construction insisted upon by the appellant’s counsel would defeat the manifest intention of the parties.
The court is further of opinion that the loss of the slaves, as a part of the security, was not occasioned by the postponement of the sale by the trustee. The sale advertized to take place on the 20th February 1860 was not prevented by any action of the creditor or of his assignee, but was postponed on account of the action of the appellant herself. It was done at her earnest and persistent request. It was done in her interest and for her benefit.
The trustee .was present to make the sale at the time duly advertized. A crowd was then present, drawn *733 to the sale by the advertisement. The slaves were then present, and they were then slaves. They would undoubtedly then have been sold but for the earnest and active interference of the appellant and friends interceding in her interest.
She was greatly and naturally distressed that the debt had not been paid, and that the property must be sold. She made earnest and tearful appeals to her uncle, the appellee’s testator, to prevent the sale. He yielded to those appeals, and paid the debt secured by the deed, and thus the sale was prevented. The appellant ought not now to allege in a court of equity that the loss of the slaves was caused by a postponement of the sale, and that this loss should fall upon the estate of her uncle, who yielded to her earnest solicitation, and in her interest and for her benefit put an end to the sale. Hor should hjs failure to order an execution of the trust deed before his death, and before the emancipation of the slaves, now be urged as a reason why his estate should lose this debt so justly due him. Surely his benevolence to her, and his indulgence to her husband for many years, ought not to avail as a reason for casting the loss of the slaves upon his estate.
The court is further of opinion that there is no sufficient proof in the cause to show that James Woods, the uncle of the appellant, had ever made to her a gift of this debt due from her husband, or that he ever promised, with or without any consideration, that the trust created by the deeds, which were assigned to him with the debt, should never be executed. On the contrary, the court is of opinion that it is clearly proved that Woods did not voluntarily and without solicitation pay this debt, but that he hesitated long before he agreed to do so; at first positively refused, *734 and did not consent to do so until it was stipulated that tke creditor should assign and transfer to him both the and the deed securing it. It was only upon this express condition, stated in writing in the body of the receipt for the money paid to the trustee, that he consented to take the place of the creditor and to stop the sale of the property. This paper was carefully filed away among his papers, and passed into the hands of his executor upon his death, who obtained from Moon, the creditor, a more formal assignment. Whatever may have been his intention at the time he paid the debt, with reference to settling this property upon his niece, that intention was never carried out. And at his death this debt with its securities was part of his estate, which, upon his death, passed to his executor; and it was the duty of that executor to collect the debt by enforcing the execution of the trust.
The court is further of opinion that in this controversy between her and the creditors of her husband the appellant cannot be regarded as the surety of her husband, or as a mere guarantor for the payment of the debt; and that as against them she can claim none of the rights of mere surety or guarantor. She united with her husband in conveying her land to a trustee for the payment of this debt. The deed was executed in the mode prescribed by the statute. There is no pretence that any fraud was practiced upon her, or that she .did not know her rights, and fully understand the consequences of her act and deed.
The deed must now be held to be what it purports to be, and what the parties intended it to be, and the trust must be enforced as the terms of the deed and the law require.
Decree aeeirmed.